Please call the next case. Would the attorneys for the appellant and the appellee please approach the podium when you get settled in and tell us who you are and who you represent. So for Mr. Henderson. Good morning, Your Honor. Assistant State's Attorney Carlos Ferrer on behalf of the people. I'll be responding to the defendant's first argument that the people failed to prove all the elements of the offense beyond reasonable doubt. Good morning, Your Honor. It's Assistant State's Attorney Alan Spellberg and I'll be addressing the Aguilar issue and all the attendant circumstances related to that. Both sides have 15 minutes, as you can see. We went into 40-some minutes on the last one. If you make it interesting, we'll let you do that, too. But we need to make it interesting. I'm sure you read the briefs. I want to thank you for filing the supplemental briefs in a timely manner. And it's a fascinating issue. It's cutting edge, as I understand it, as of yesterday afternoon. Still no cases have been published. We have two unpublished cases on Aguilar. I don't know how that happened, but it happened. And so anytime you are ready, Mr. Skro. Okay. Once again, Pete Skro, representing Jaquan Henderson. The reason we're here is because the statute that's on his minimus has been declared unconstitutional, or that specific section. So the question is what to do with the other FOID card conviction. The FOID card conviction, I believe, is also unconstitutional for two reasons. One is it's not severable from the section struck in Aguilar. And two, the FOID card requirements in Illinois are unduly burdensome for those under 21 years of age, in a way that you cannot restrict fundamental constitutional rights in that manner. Can we get to the second one first? The argument that under 21 should be also found unconstitutional, since our Supreme Court, Aguilar, specifically held that that statute, the unlawful possession of guns by people under 21, is okay. It doesn't violate the Constitution. I believe that was under 18. All right. The unlawful possession. They did say under 18, yes, because that defendant was 17 or whatever he was. Well, I think it's, you know, when you're 18, you're no longer a juvenile. You're a full adult. You can vote. You can serve in the military. There's no precedent in any constitutional law that I've been able to find where you can restrict a fundamental constitutional right to those 18 and over, for really anything approaching these reasons. Liquor, cigarettes. Handguns are okay, though. You can't drink, but you can pack heat. Well, liquor and alcohol are not fundamental constitutional rights, so I don't think they are not implicated by the Constitution. So, I mean, if you look at every other constitutional right, it's been extended to even minors younger than 18, as far as your First Amendment rights, your Fourth Amendment rights, your Sixth Amendment rights, your Eighth Amendment rights. There's really no precedent at all. I mean, I think if you look at what this FOID card provision sets up, you're disenfranchising people based on the status of their parents, and I don't think that can pass constitutional muster. If your parent can't get a FOID card, they can't give you permission to give a FOID card. You have to get your parent's permission to get a FOID card if you're under 21 years of age. So I think it's, you know, you look at someone who could be 18 serving in the military, they could be overseas bearing arms to defend our rights, and they come back to Illinois, and under the FOID card statute, they could be prevented from getting exercise in this fundamental constitutional right based on the status of their parents. I'm defending the West Side or South Side by packing handguns in their pockets, right? Excuse me? We're violating their rights by not allowing them to protect the South and West Sides. Well, I think it doesn't matter where you live. This fundamental constitutional right applies to all people equally. I mean, I think that's a question that's come up in all of these cases is what is this right? If you look at the plaintiff in McDonald, he, I believe, was part of his argument was he lived in a dangerous neighborhood on the Chicago South Side. So, I mean, Mr. Henderson, according to the police, lived in a high-crime area. So I think this is the core. I mean, what do we know after Aguilar? The fundamental right protected by the Second Amendment is an individual right to self-defense. That right is manifest through being able to carry a handgun for self-defense. Now, of course, there can be reasonable regulations on this, but like I said, I don't think there's any precedent or there's any way that you can conceive of a constitutional right being restricted in this way. We simply do not do that in Illinois. Now that we know it's a fundamental constitutional right, say you're going to be disenfranchised because of the sins of another. Well, you've got the court in Aguilar that pertains to this says, like most rights, the right secured by the Second Amendment is not limited from Blackstone through the 19th century cases. By the way, Blackstone was in the 1700s. Commentators in courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. Nothing, in our opinion, should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places, such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. That's what the court said in Aguilar. In the brief, you talk about parental, the FOID card and parental control, and then you say these parental exceptions clash directly with Heller's mandate that the Second Amendment protects the right to own firearms for self-defense and creates absurd results. The offspring of a felon, a drug addict, a dangerous psychotic, a person subject to an order of protection, or a person convicted of domestic violence may have more need for a firearm than others. Where are you taking this? Aguilar talks about having some line to have drawn to make certain that this is done in the appropriate way, and that people who are, should be kept from being harmed by firearms by certain regulatory mechanisms. And isn't it a good idea to have an FOID card so you know who has had a background check? How do you reconcile what Aguilar has told us, what our Supreme Court has directed to us, and then put it into such a broad form that anybody with no controls whatsoever can do whatever they want? Well, Your Honor, that's not the argument I'm making at all. The problem with the FOID card statute as it stands, sure, felons, dangerous psychotic, drug addicts, there should be reasonable ways to keep them from getting guns. And it allows parents to have the right to vouch for their child to possess a firearm through an FOID card? Parents of adults, though, I think that's where it runs afoul of the law. Parents of adults? Under 21. People 18 to 21. People who are full adults with voting rights. They don't, you know, when you're 18, you're not dependent on your parents, you can live on your own. Like I said, there is no precedent in constitutional law that I've been able to find anything remotely like this where because a parent might be a bad person, you are going to infringe another's constitutional rights based on the status of a parent. I think that's where the FOID card statute runs afoul of the Constitution. It's not that felons shouldn't, there should be reasonable ways to stop felons from having guns. Well, our Supreme Court just a couple of weeks ago has pointed out in the state brief, which was filed before your brief, supplemental brief, in quorum, for about 30 pages, the Supreme Court ruminated three different opinions on it about FOID card act. And they had no problem with it, right? Not one of them, seven. And there were three separate writings. Suggested the FOID act was unconstitutional in any manner, right? Well, I think if it's addressing someone who's under 21, who's an adult. Granted, Koren was not under 21, he's just a convicted wife beater, I guess. Right, and I think, once again, I think that's perfectly legitimate. What I don't think is legitimate is to say, you're related to a convicted wife beater, therefore we're going to infringe your constitutional right. Basically, completely abrogate it, not just infringe. Let's move on to your first argument. I regret, honestly, moving to the second argument. The first argument, the idea of severability. Sure. You make the point at page 70 of your supplemental brief, provisions are severable only if the legislature would have passed the valid portions of the statute without the invalid portions. Now, pursuant to Moore, which was not appealed by our attorney general, the state legislature on July 9th passed a new act, the concealed carry act. Sure. And in doing so, at 2416I, like I do, they again passed the person possessing the weapon was under 21, and this is a violation, under 21 years of age, and in possession of a handgun. Unless, blah, blah, he was hunting with some family member or whatever it would be. Right? So they passed it again on July 9th, some three months ago. Sure. Does that indicate that they would pass the act of 21 since they did it three months ago after they considered Moore and obeyed the Moores of the state? Well, I think, okay, that's a separate question. They may have intended to disenfranchise under 21 again. I think that's unconstitutional regardless of severability law in Illinois. With regards to his conviction under 3C for not having a Floyd card, I think if you look at the status of the law at the time he was of this offense, persons like Mr. Henderson were going to catch 22. We know now after Aguilar that the right of self-defense includes to carry a loaded handgun in some capacity. At that time, what could he do? So if you wanted to exercise this fundamental constitutional right, you could try to get a Floyd card. Well, you're still guilty of Aggie UW under 3A. So I think it's like at that time there was no alternative for someone to exercise this fundamental constitutional right. As opposed to now, the legislature has put in place a way that you can get a concealed carry permit, so that you can now exercise this fundamental right. So I think the problem is at the time. But now, pursuant to that, the July 9th Act, people who wish to carry guns in their pockets anywhere in Illinois, have to have a concealed carry permit. And that's rational? You're conceding it's rational and that passes constitutional muster per you? Yes, Your Honor. So in the requirements of a concealed carry card, one of those, the first one is to have an FOID card, is that right? Yes, Your Honor. And then later on, you also have to have training and blah, blah, and certain guns and all that. There are many more restrictions on concealed carry permit than there are on FOID card, right? Yes, Your Honor. But you can't, the first step is to get that FOID card. Well, perhaps I misspoke. I think the problem with the FOID card does not go away because there's a concealed carry permit. I think the concealed carry permit cures the problem with 3A, which was a blanket ban on handguns outside the home. But I still think if this is a fundamental constitutional right, which it is, I do not think there is any way that this constitutional right can be infringed based on the status of what someone else did for adults in Illinois. Get away from the 21, all right? Sure. It went down that rabbit hole. Let's get back from the rabbit hole. So now the concealed carry permit requirement under your theory, and this is not for time immemorial, just for argument's sake, would also be an unconstitutional infringement under your theory. Two goes under 21, yes, Your Honor. Well, why not for everybody? Why should anybody have to get a concealed carry permit? Well, I mean, I'm not here to challenge the constitutional way of the concealed carry permit. I think it's – I think that a regime where there's reasonable regulations on the concealed carry of a weapon is going to stand constitutional muster. I would agree with you. That being so, is again, since that is much more restrictive, the concealed carry requirements are much more restrictive than FOID, how could not FOID pass constitutional muster? Well, you know, excepting what we already talked about under 21. We won't cite an opinion that Mr. Skrull said it was okay. I promise you. I'm not trying to back you up. Well, I think it's – we'll have to look at the statute in effect at the time of this offense and what were Mr. Henderson's options to exercise this right. He had none because if he had gotten a FOID card, he would have still been guilty of the exact same offense, aggravated unlawful use of a weapon for having it outside the home. So I think you had a statutory regime in place that infringed this right to where he could try to – no matter what he tried, he would be guilty of this statute, a violation of this statute. And so at the time of the offense, we'll be able to – What's wrong with that? What's wrong with that, right? So, yeah, if he had done this act, which he did – and again, understanding I'm not conceding he did it – it's unconstitutional for the state of Illinois to have said, and it's been determined by our Supreme Court, that you're allowed to have a gun in your pocket throughout Illinois as a result of self-defense. They didn't reach the FOID issue. Why does it violate anybody's rights that you have to have an FOID card as well? Well, I think now that the statute's been amended to where you have a way to actually exercise this fundamental constitutional right, it's – you know, except in what we've previously discussed, it's not unconstitutional. But at the time, would the legislature have set up a regime where you basically were – no matter what you did, you were violating an Aggie UW statute? I believe no. I think – So the argument is that until July 9th of this year, every case, including – every UW case, including the counts resting on lack of FOID card, are unconstitutional, right? Yes, Your Honor. I think if you look at – this legislature was operating from a completely unconstitutional premise that you had no right to basically firearms at all, and they had all these restrictions that are unduly burdensome and – And in doing this – and they're holding – they did not rely on Heller and McDonald, did they? They relied on a case called Moore v. Madigan out of Posner down the street here at 219, right? Yes, Your Honor. I mean, obviously – Quoting Moore, the Seventh Circuit held, the Illinois legislature could, quoting now, sensibly require that an applicant for a handgun permit establishes competence in handling firearms. A person who carries a gun in public but is not well trained in the use of firearms is a menace to himself and others, 702 F. 3rd at 941. So even Posner, even in Moore, they said, concealed carry permits requiring training would pass constitutional muster. Would you agree with that? Yes, Your Honor. Okay. And so how, then, is it that an FOID requirement, which is much less, would not pass constitutional muster? Well, like I said, I don't think – now I don't believe that it does, that it is unconstitutional once it gets accepted. If it's not unconstitutional today, then why was it unconstitutional in 2008? Because I think the legislature was operating from this premise that they could ban this completely, and so someone in the position – if you realize that you live in a dangerous neighborhood and you need to exercise your fundamental constitutional right to self-defense, but it doesn't matter if you get a FOID card or not, you're going to be guilty of the same exact offense. Well, it's not the same exact offense, is it? Well, it's aggravated unlawful use of a weapon. The same, you know, Class 4 felony to Class 2 felony. You know, I mean, the same – right, the different section. But I think people at that time were set up in a Catch-22 where they could not exercise their constitutional right to self-defense. And as, you know, based on what I said before, I believe that even with that, the burdens that it places on people 18 to 21 are simply unconstitutional. I would reserve time for rebuttal if – You have time, Mr. Skro, no problem at all. Mr. Vera, unfortunately, Mr. Skro was kind enough not to reiterate his brief about how his client didn't do it, so you will not be allowed to argue since he didn't argue that himself. And if you want to address that issue – I'm not conceding it. I mentioned that. We just – we don't need – I appreciate what you did, Mr. Skro. I really do. It's in the brief. You'll stand on your brief. Mr. Spelberg, welcome to a brave new world. Thank you. Why can't we all carry guns in our pockets? Well, those people who are lawfully entitled to carry guns and get a proper concealed carry permit can certainly carry a gun as recognized by the Seventh Circuit, as recognized by the Illinois Supreme Court, as recognized by the state legislature. That's not what happened here, though. Instead, what we have here is a – Well, he couldn't get something that didn't exist, right? No. But he could have at least taken the initial step of getting an FOID card. And I just would like to address, Mr. Skro. And 17? Wasn't it 17? Yes, Your Honor. And it merged the – that was one of the – I think it was one of those merged counts between the FOID and ZAID. Count 5 was merged. Yes. Was it merged? Yes. Yes. And the only count that judgment was entered at and sentence was imposed at was the count involving the loaded on case to immediately accessible, the Aguilar count, the one that was struck down. And you want us to remand for sentencing on the FOID value? On the no FOID count, yes. And if I could just explain why Mr. Skro's argument as to why it would be impossible for people under 21 to get FOID counts. It's actually quite simple, and he's overlooked something very significant, which is the Coram case, which we cited in our supplemental brief, which came out the same day as Aguilar. Coram involved a person who had been denied an FOID. And admittedly, he was an adult, but he had been denied an FOID card. And what he did was, pursuant to the FOID Act, he appealed to the court for the ability to obtain an FOID card. And ultimately, he was granted that relief by the Illinois Supreme Court. But the key is that the provision of the FOID Act authorizes anybody to challenge an improper denial. Included in that is the ability for a person who applies for an FOID but is denied because he's under 21 and can't get his parents' approval. That person is entitled to seek relief through the administrative process. Now, the code under the FOID Act in Section 10A of the FOID Act, it's 430 ILCS 65-10A, that specifically provides that whenever an application for a firearm owner's identification card is denied, the grief party may appeal to the director of the state police for a hearing upon such denial. And the standard in which the state police looks at, the director of the state police looks at, is whether or not substantial justice has been infringed, whether or not the card should have been granted despite the statutory prohibition. And if the director of state police denies that, that can also be appealed to the courts through administrative review. So just to start off with the premise that it's impossible for someone under 21 to get an FOID without the parental involvement, that's blatantly not true. In terms of this case, there is absolutely no evidence and no indication at all that this defendant ever even attempted to get an FOID. Instead, what he did was he, as Mr. Scronav says, was asserting his constitutional rights by carrying a gun on the streets of Chicago. But that's not authorized under any law if you don't have an FOID card. And the Illinois Supreme Court has recognized the significance of the FOID card and the importance of it. And the Seventh Circuit has recognized the significance of the FOID card. And I would note that the plaintiffs in the Moore case were FOID card holders who were seeking permission through declaratory judgment action to carry a loaded firearm on the street, but did not want to violate the law until they had that permission by the courts or by the legislature. And so clearly the FOID Act is an important regulation upon the ability to carry guns, and that's what the Illinois Supreme Court recognized in quorum. That's what the Illinois Supreme Court implicitly recognized in Aguilar. The FOID count, there was no FOID count at issue in Aguilar, so that's why this issue wasn't addressed there. In terms of the constitutional rights of persons on the court. Can I interrupt you? Of course. When was the last time the FOIA required, FOID requirements for statute was attacked on a constitutional basis? I'm not sure, Your Honor. I mean, 20 years ago or when it first came out? I'm not sure. I'm not sure. It seems to me that the quoted language out of Aguilar and the other decisions stand for the proposition that the state has the authority to regulate a felon possessing a weapon, a mentally ill person possessing a weapon, et cetera, but they never said via getting registration through a card. So it seems to me that it's almost all backwards, that the state can say felons can't have guns, mentally disabled cannot have guns, domestic abusers cannot have guns, minors cannot have guns, but the requirement to go register to say all that is something that may be inferred. So that if I was walking down the street and I had a gun and I'm 66 years old and I've never been convicted of a felony, I'm arguably not mentally disabled, why can't I carry a gun? Simply because I didn't go to the state of Illinois building and fill out a form and hope that the state police said it was okay for me to have a gun? That's the question. I understand the question, and if I could address it. What you're essentially asking is whether or not there would be a due process violation by having the legislature set up a regime of determination that someone is competent and qualified to carry a gun. I don't believe that would ever be a question. I don't know if the FOID Act has ever been challenged in that regard, but given that Heller, given that McDonald's, given that Moore, and now that Aguilar all recognize that there are significant authority for the legislature to limit access to firearms to certain people, the choice of the legislature here to have a permitting process is not unreasonable or irrational, which would be the standard they have to address it. So it would be okay to permit someone to exercise a constitutional right to possess a gun for self-defense? I would liken it to registering to vote. That is clearly a fundamental right, but you don't have the right to vote on Election Day unless you've previously registered in that regard. I would say that the ability to vote is even more fundamental to our society and our democracy than the ability to carry a loaded firearm in public. Also, I would just say in regards to the FOID point, this statute, this aggravated unlawful use of a weapon, addresses carrying a gun in public. It's still a question of public. It's not in any way going to the core fundamental right recognized in Heller and McDonald about having a gun for your own self-defense at home. And so because even more recognized that the danger to society of having additional ready, operable firearms in public is greater than it is at home, in someone's home, that the legislature and the states have a greater interest in making sure that only proper people and properly trained people are carrying those weapons. This defendant was not one of those persons. This defendant never put himself in that class. In regards to the severability question, Illinois law is clear, and it's provided in the statute on statutes, that whenever one part of a statute is deemed invalid, the other parts may still be considered valid unless there is a reason that they are inextricably intertwined and cannot stand on their own. We did not make a severability argument in our supplemental brief because we weren't expecting it. We were surprised. It was a little bit surprising to us given the fact that counsel in the opening briefs in this case had conceded the constitutionality of the FOID conviction. We appreciate the state's submittal to the supplemental authority. Thank you. But in terms of severability, even looking at the cases which defense counsel cites, the People v. Warren, the Fiorito, what they do is they refer to Section 1.31 of the statute on statutes. And what those statutes say, what those cases say, is that the general severability provision of Section 1.31 applies, typically, unless there is legislative reason to believe that the statute would not have been passed absent the improper provision. Well, counsel's argument is essentially that, well, the legislature is trying to come up with a comprehensive ban for carrying guns in public. And he's correct in the sense that that's what Section 3A did. 3A created a comprehensive ban on the carrying of a loaded, accessible, and loaded immediately accessible and uncased firearm in public. That's what the Aguilar court struck down. But the rest of the aggravated unlawful use of a weapon statute address the status of the person or the other manner in which it was carried. The most important status one would be the one at issue in this case, which is the no FOID provision under C. The other one, which is very important, is the one under I, regarding being under 21. But the other one's dealing with the manner in which it's being carried. And I would direct this court to the provisions which say that it constitutes an aggravated unlawful use of a weapon if you're carrying a firearm while committing certain misdemeanor offenses or if you are threatening somebody in a manner that caused harm upon them. So those are also legitimate provisions which the legislature is trying to protect the individuals, the citizens of the state of Illinois from being faced with guns and crimes and from having people who are not otherwise qualified to carry a firearm off their own land. And so it's for that reason that the statute is constitutional. The conviction under Count 5 is proper, and it should be remanded for resentencing on that count. And if there's no further questions, we'd ask you to affirm. Thank you. Thank you. Thank you. Have you argued anywhere else on this, Mr. Spellberg? Is this the first oral argument on this issue? No, Your Honor. This was the very first oral argument we've had. The issue, which I'm sure you're not surprised, is boiling over the top of the pot in the circuit courts, in juvenile courts, in the criminal courts, all throughout the county, and really throughout the state. But this is the first oral argument. It was also a surprise to me that there had been no published opinions addressing Aguilar. I think that's probably because there is some uncertainty about just the scope of the decision. I should also note just that we have actually filed a petition for a hearing in Aguilar, not challenging the Second Amendment ruling, but the facial unconstitutionality, pointing out that Section 3A is also applicable to persons who have prior felony convictions, and that it's a Class 2 version of the offense as opposed to a Class 4. And that would seem to be, from our position, would seem to be lawfully applicable, lawfully applied under the Constitution, under the Second Amendment, and under the plain language of Aguilar. And so we have asked the Court to clarify whether or not it is facial. And that argument will go to trying to save the convictions of those not charged as UUW by felons, but rather convicted of the enhanced offense, UUW, and then the element. Right, yes, yes, yes. Thank you, Your Honor. Mr. Scrow. One point about the appeal provision in the Floyd card statute. I do not believe that that saves these constitutional burdens. You can't give veto power to someone over another's constitutional right. In the Danforth case, the Planned Parenthood case cited in the brief, supplemental brief, it was like a father had veto power over a woman's right to an abortion. And there was a savings clause. You could get an affidavit from the doctor or whatever, but that didn't matter. You don't have, you cannot give someone else control over your constitutional rights. And I think the voting is very apt. Sure, you have to register to vote, but I don't think we would let a statute that said, if your parent commits a felony, we're going to disenfranchise you from voting. Oh, and if you want, you can go to the state police and appeal and try to get it. That's simply a burden that would not stand at any other constitutional right. And I think now that we know that this is a fundamental constitutional right, Illinois's Floyd card restrictions on those under 21 is unconstitutional. Thank you. This case will be taken under advisement. Thank you for the additional briefs and the arguments. And this Court will be adjourned.